UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SAEED AZIZI,<br><br>            Plaintiff,<br><br>   v.<br><br>ELDORADO RESORTS CORPORATION, *et al.*,<br><br>            Defendants. | Case No. 2:15-cv-00755-RFB-PAL<br><br>**ORDER** |

## I.   INTRODUCTION

This case is before the Court on a Motion to Dismiss filed by Defendants Eldorado Resorts Corporation ("Eldorado") and Michael Marrs, Bruce Polansky, Kristen Beck, Dominic Taleghani, and James Grimes, all of whom are directors, project managers, or vice presidents at Eldorado. ECF No. 18. In their motion, Defendants seek dismissal of Plaintiff Saeed Azizi's First Amended Complaint.[1] This written order elaborates the Court's previous oral ruling on the Motion.

## II.   BACKGROUND

### A. Alleged Facts

Plaintiff alleges the following facts in his Amended Complaint. During the times relevant to this case, Plaintiff was an employee of Eldorado. Plaintiff is of Middle Eastern descent and 57

---

[1] Defendants also filed a Motion to Dismiss Plaintiff's original Complaint. ECF No. 8. However, Plaintiff filed his Amended Complaint within 21 days of the filing of that motion, which is permitted one time as a matter of course. Fed. R. Civ. P. 15(a)(1)(B). The Amended Complaint is therefore the operative complaint in this action, and Defendants' first Motion to Dismiss is denied as moot.

1  year-old at the time he brought this action. He began his employment with Eldorado from 2003-
2  2009 and again from October 2011-July 2014. He worked as as a Project Director, and later a
3  Sales Director during his employment. Plaintiff earned a salary of $455 per week and a
4  commission percentage of 7%. On approximately July 2, 2014, Plaintiff was constructively
5  discharged.

6    During Plaintiff's employment he was subjected to harassment on a daily basis. His
7  supervisors would refer to him as a "Camel Jockey," a "Little Terrorist" and a "Bomb Maker."
8  They had Plaintiff purposefully not wear his name tag because it sounded "Arabic."

9    Plaintiff was also instructed by senior management at Eldorado to target FMLA
10 employees for "write ups" for poor performance so that Eldorado would have cause to fire these
11 employees. Plaintiff was told to obtain three write ups as soon as possible on FMLA employees,
12 and alleges that this was part of a practice by Eldorado in which middle managers and human
13 resources officers were ordered to place employees on administrative leave for long enough
14 periods of time that they would not qualify for FMLA leave the following year. When Plaintiff
15 refused to comply with senior management's orders, his positions, income, and commissions
16 were changed in ways that appeared to be promotions, but operated as demotions because they
17 negatively impacted his income. Plaintiff also alleges that he endured verbal abuse in his work
18 environment and was threatened with loss of his job and physical harm if he did not like it. After
19 reporting these comments, Plaintiff's positions, commissions, and sales teams were changed to
20 negatively impact his income.

21   Plaintiff alleges that Defendants repeatedly retaliated against him for reporting the hostile
22 work environment at the Las Vegas Eldorado facility. He experienced extensive stress and verbal
23 abuse in his work environment and was forced to stay for extended periods afterhours senior
24 management, including but not limited to Michael Marrs. He was continuously threatened with
25 loss of employment, loss of limbs and his head and was told to go "flip burgers if he doesn't like
26 it." Plaintiff repeatedly reported this abuse; however nothing changed other than Plaintiff's
27 positions, commissions and sales teams in a way that negatively impacted his income.

28   Throughout his employment at Eldorado, Plaintiff witnessed discrimination by

supervisors based on race, color, religion, and national origin. Eldorado has admitted that the random matching system, which pairs sales representatives with customers, has a manual override that is frequently utilized to match sales representative with customers of corresponding races. While Eldorado claims that this was to overcome language barriers, plaintiff alleges this is mere pretext. Eldorado regularly forced race-based matches. Eldorado ordered its sales representatives to sit in the lobby and target customers based on similar race, color, religion, and/or national origin.

In addition, Plaintiff makes several allegations against Eldorado with respect to his pay. Plaintiff alleges that Eldorado changed his pay rate and commission percentage several times without any notice or opportunity for Plaintiff to review the changes, and that there were no set criteria to determine when his pay rate would change or how it would change. Further, Plaintiff alleges that during his employment with Eldorado, he was not provided with rest or meal breaks, was not paid overtime despite consistently working over 40 hours per week, and was charged commission reversals by Eldorado without any explanation for sales made months or years earlier. Finally, Plaintiff alleges that Eldorado engaged in "backdoor" sales by offering customers a better deal, waiting for the customer to accept, canceling Plaintiff's sales in order to sell the property directly to the customer, and cutting Plaintiff's commissions on the sales.

In his Amended Complaint, Plaintiff asserts 11 causes of action: 1) race, color, religion, and national origin discrimination under Title VII and N.R.S. 613.330; 2) breach of contract; 3) retaliation under the FMLA, Title VII, and N.R.S. 613.330; 4) breach of the implied covenant of good faith and fair dealing; 5) tortious discharge; 6) failure to pay overtime under the Fair Labor Standards Act (FLSA) and N.R.S. 608.018; 7) failure to pay each hour worked under N.R.S. 608.016; 8) failure to pay wages for periods for meal and rest under N.R.S. 608.019; 9) unlawful taking of wages under N.R.S. 608.100; 10) willful failure/refusal to pay wages under N.R.S. 608.190; and 11) waiting time penalties under N.R.S. 608.040.

**B. Procedural History**

Plaintiff filed his original Complaint on April 23, 2015. ECF No. 1. Defendants filed a Motion to Dismiss on June 23, 2015. ECF No. 8. This Motion was denied on March 30, 2016.

1  ECF No. 40.

2  On July 10, 2015, Plaintiff filed an Amended Complaint, which is now the operative complaint in this action. ECF No. 14; see note 1, supra. Defendants filed a second Motion to Dismiss on July 27, 2015. ECF No. 18. Plaintiff voluntarily dismissed Defendants Grimes and Polansky from this action on December 18, 2015. ECF No. 32.

The Court held a hearing on March 30, 2016 in which it granted in part and denied in part Defendants' second Motion to Dismiss. ECF No. 40. The Court held a status conference on May 31, 2016. ECF No. 47.

### III.   LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

### IV.   ANALYSIS

After reviewing the parties' briefs, the Court concludes that Defendants' Motion to Dismiss must be granted in part and denied in part. Defendants raise a variety of arguments in support of their motion. The Court considers each argument below.

**A. Plaintiff's Title VII Discrimination Claims (Count 1)**

To establish a *prima facie* case for discrimination under Title VII, a plaintiff must

- 4 -

1  demonstrate that: (1) he belongs to a protected class, (2) he was qualified for his job, (3) he
2  suffered an adverse employment action, and (4) similarly situated individuals outside the
3  protected class were treated more favorably, or other circumstances surrounding the adverse
4  employment action lead to an inference of discrimination. Fonseca v. Sysco Food Servs. of Ariz.,
5  Inc., 374 F.3d 840, 847 (9th Cir. 2004). "Adverse employment action" is defined broadly, and
6  includes "where an employer's action negatively affects its employee's compensation." Id. at
7  847.
8        To state a hostile work environment claim, a Plaintiff must allege that (1) the defendants
9  subjected him to verbal or physical conduct based on a protected characteristic; (2) the conduct
10 was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions
11 of his employment and create an abusive working environment. Surrell v. Cal. Water Serv. Co.,
12 518 F.3d 1097, 1108 (9th Cir. 2008). "The working environment must both subjectively and
13 objectively be perceived as abusive." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir.
14 2000) (internal quotation marks omitted). Whether an environment was hostile or abusive is
15 determined by looking at the totality of the circumstances; "[t]hese may include the frequency of
16 the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a
17 mere offensive utterance; and whether it unreasonably interferes with an employee's work
18 performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "No one single factor is
19 required." Id.
20       The Court concludes that Plaintiff has stated a claim under Title VII for discrimination
21 based on race, color, religion, and national origin under both disparate treatment and hostile
22 work environment theories.
23       Defendants argue that Plaintiff has not pleaded facts showing that he was personally
24 discriminated against or how Eldorado's alleged policy of steering customers based on race,
25 religion, and other characteristics was discriminatory in nature. Azizi alleges that Eldorado,
26 pursuant to its policy of steering customers, consistently sent him to tables with Muslim
27 customers and customers of Middle Eastern descent, which negatively affected his income
28 because he was steered away from other customers. Additionally, Azizi alleges that he is Muslim

and is from Iran. He alleges that he was subjected to harassment from his supervisors on a daily basis, including being called "camel jockey," "little terrorist," and a "bomb maker." His supervisors also instructed him not to wear a name tag because his name "sounded Arabic." These allegations are sufficient to state a Title VII claim under disparate treatment and hostile work environment theories. Whether these allegations suffice to create a subjectively and objectively hostile work environment is a highly contextual and fact-driven inquiry inappropriate for resolution at this stage.

The Court denies Defendants' Motion as to Plaintiff's Title VII discrimination claim.

### B. Breach of Contract (Count 2)

#### 1. *Applicable Law*

In Nevada, breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987). A breach of contract claim under Nevada law requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. Richardson v. Jones, 1 Nev. 405, 409 (1865); Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Richardson).

#### 2. *Application*

Defendants argue for dismissal of Plaintiff's breach of contract claim for failure to allege sufficient facts to state a claim. Plaintiff responds that his allegations that Defendants intentionally stole money from him through commission reversals and backdoored sales are sufficient to state a claim for breach of contract. The Court finds that Plaintiff has adequately pleaded facts establishing his breach of contract claim.

First, Plaintiff alleges that a valid contract of employment existed between him and Defendants. Plaintiff states that these contracts required him to work to sell timeshares in exchange for a base wage, commissions, and benefits. Although Plaintiff has not attached copies of the operative contract, he is not required to at this stage, particularly since he states that this information is in the possession of Defendants. Second, Plaintiff has alleged that Defendants

1  breached their employment contracts by engaging in intentional acts to steal wages from
2  Plaintiff. These alleged acts include reversing Plaintiff's commissions for sales made months and
3  years earlier, "back-dooring" sales by negotiating with customers with whom Plaintiff had
4  already finalized sales, and failing to pay Plaintiff overtime wages and wages for each hour
5  worked and by depriving him of lunch and rest breaks.  In addition, Plaintiff also alleges that
6  Defendants breached his employment contracts by demoting and constructively discharging him
7  for refusing to participate in Defendants' practice of issuing write-ups to FMLA-eligible
8  employees. Finally, Plaintiff has alleged that he was damaged in the form of lost wages and
9  benefits. Therefore, Plaintiff's claim may proceed.

### C.  Plaintiff's Retaliation Claims (Count 3)

#### *1.  Applicable Law*

Both Title VII and the FMLA prohibit discrimination against employees because they have opposed any employment practice prohibited under those statutes or because they have made a charge, testified, or participated in an investigation under those statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 2615(a)(2), (b). A prima facie case for retaliation under Title VII requires the plaintiff to show that: (1) she engaged in a protected activity,  (2) she suffered an adverse employment action, and (3) a causal link exists between the protected activity and adverse action. Manatt v. Bank of America, N.A., 339 F.3d 792, 800 (9th Cir. 2003). But-for causation is required to satisfy the third prong. Univ. of Texas Southwestern Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533 (2013).

"Protected activities" under Title VII include opposing allegedly discriminatory acts by one's employer. Id.; 42 U.S.C. 2000e-3(a). They also include making informal complaints to one's supervisor. Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).  "When an employee protests the actions of a supervisor such opposition is a protected activity." Trent v. Valley Elec. Ass'n Inc., 41 F.3d 524, 526 (9th Cir. 1994). Further, if an employee communicates to his employer a reasonable belief the employer has engaged in a form of employment discrimination, that communication constitutes opposition to the activity. Crawford v. Metro.

1 Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009).

2 The Ninth Circuit defines "adverse employment action" as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir. 2000).

The Ninth Circuit has not reached the issue of whether this burden-shifting framework also applies to retaliation claims under the FMLA, although it has observed that some version of this framework is applied in at least three other circuits. See Sanders v. City of Newport, 657 F.3d 772, 777 (9th Cir. 2011) (citing cases from the Sixth, Tenth, and First Circuits).

### 2. Application

The Court finds that Azizi has stated a claim for retaliation under Title VII and the FMLA. After alleging facts supporting his claim of a hostile work environment based on derogatory comments and Eldorado's policy of writing up FMLA-eligible employees, Azizi alleges that he reported this hostile work environment. Pursuant to Ninth Circuit case law, this is sufficient to establish that he engaged in protected activity.

Further, Azizi alleges that he was retaliated against for reporting this conduct, including being threatened with loss of his job and physical harm and being subjected to changes in his job that resulted in a loss of income. The Court finds that these allegations establish that he suffered adverse employment action.

Because the Court finds that these allegations are sufficient to state a claim for retaliation under both Title VII and the FMLA, the Court denies Defendants' Motion as to Plaintiff's retaliation claims.

**D. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 4)**

### 1. Applicable Law

A contractual claim for breach of the implied covenant of good faith and fair dealing exists where "one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied[.]" Hilton Hotels Corp.

1  v. Butch Lewis Productions, Inc., 808 P.2d 919, 923 (Nev. 1991). Additionally, the defendant
2  may also be tortiously liable under this claim under "limited circumstances" where the employer-
3  employee relationship "approximates the kind of special reliance, trust and dependency that is
4  present in insurance cases" and the employer betrays that relationship in bad faith. D'Angelo v.
5  Gardner, 819 P.2d 206, 215 (Nev. 1991). This additional tort liability is allowed only in cases
6  where "ordinary contract damages do not adequately compensate the victim because they do not
7  require the party in the superior or entrusted position . . . to account adequately for grievous and
8  perfidious misconduct, and contract damages do not make the aggrieved, weaker, 'trusting' party
9  'whole.'" K Mart Corp. v. Ponsock, 732 P.2d 1364, 1371 (Nev. 1987), abrogated on other
10 grounds by Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990).

### 1. Application

The Court finds that Plaintiff has stated a claim for contractual liability for breach of the implied covenant of good faith and fair dealing. Plaintiff has alleged that Defendants performed under their employment contracts in a manner unfaithful to its purpose by charging commission reversals against Plaintiff's earnings, "back-dooring" numerous sales by Plaintiff negotiating a better deal with the customer and cutting Plaintiff's commissions.

However, Plaintiff has not stated a claim for tort liability for the breach of the implied covenant of good faith and fair dealing. Plaintiff has not alleged a relationship of "special reliance" like the one present in insurance cases. In determining whether such a special relationship exists, important factors include the promise of permanent employment, the length of employment, and termination involving deception, betrayal, or perfidy. Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 336 (9th Cir. 1995) (citing D'Angelo, 819 P.2d at 215). In Plaintiff's Amended Complaint, Plaintiff has not alleged facts that would support a finding that any of the D'Angelo factors exists here. Therefore, to the extent Plaintiff asserts a for tort liability for breach of the implied covenant of good faith and fair dealing, his claims is dismissed with leave to amend.

### E. Plaintiff's Tortious Discharge Claim (Count 5)

### 1. *Applicable Law*

"An employer commits a tortious discharge by terminating an employee for reasons which violate public policy." D'Angelo v. Gardner, 819 P.2d 206, 212 (Nev. 1991). This cause of action is also known in Nevada as a "public policy tort." Id. Tortious discharge includes the dismissal of an employee "in retaliation for the employee's doing of acts which are consistent with or supportive of sound public policy and the common good." Id. at 216. However, this tort is limited to "those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." Sands Regent v. Valgardson, 777 P.2d 898, 900 (Nev. 1989).

The Nevada Supreme Court has recognized a claim for tortious discharge when an employer terminates an employee "for seeking industrial insurance benefits, for performing jury duty or for refusing to violate the law." D'Angelo, 819 P.2d at 212. In addition, tortious discharge arises where an employer terminates an employee "for refusing to work under conditions unreasonably dangerous to the employee." Id. at 216. Finally, even if a plaintiff alleges the violation of a strong public policy, courts may not recognize a public policy tort claim if adequate statutory remedies already exist for the alleged termination. Id. at 216-18.

### 2. *Application*

The Court finds that Plaintiff has adequately alleged a claim for tortious discharge. Plaintiff alleges that he was threatened with termination or withholding of pay if he did not write up employees who took leave under the FMLA, that he refused to do so, and that he was verbally harassed, demoted, and constructively discharged for refusing to do so. Plaintiff also alleges that he sought explanations for Defendants' reversal of commissions and failure to pay wages due, were met with resistance and not given any specific explanations, and was subsequently terminated or constructively discharged. These allegations are sufficient to state a claim for tortious discharge in Nevada.

A claim for tortious discharge is "available to an employee who was terminated for refusing to engage in conduct that [she], in good faith, believed to be illegal. Any other conclusion . . . would encourage unlawful conduct by employers and force employees to either consent and participate in violation of the law or risk termination." Allum v. Valley Bank of

Nev., 970 P.2d 1062, 1068 (Nev. 1998) (internal quotation marks omitted) (alteration in original). Plaintiff's allegations show that he was discharged or constructively discharged for refusing to engage in conduct that he believed in good faith to be illegal, and for engaging in acts consistent with sound public policy and the common good.

Defendants argue that adequate remedies already exist for Plaintiff's public policy tort claims. Defendants cite to the Nevada Supreme Court's decision in D'Angelo, in which the Court cited to a previous case, Sands Regent v. Valgardson, in which it refused to recognize a tortious discharge claim based on age discrimination because the plaintiffs had already recovered tort damages under the ADEA. Here, there has been no showing that Plaintiff has already recovered any tort damages for Defendants' alleged actions. Plaintiff's tortious discharge claims also address a separate wrong—Eldorado's alleged adverse employment action based upon refusal to engage in unlawful conduct.. Moreover, Defendants' position is inconsistent with the Nevada Supreme Court's holding in Allum that "[a] claim for tortious discharge should be available to an employee who was terminated for refusing to engage in conduct that he, in good faith, reasonably believed to be illegal." 970 P.2d at 1068. Therefore, under the Nevada Supreme Court's decisions in Allum and D'Angelo, these Plaintiffs have stated public policy tort claims.

Defendants' Motion is therefore denied as to Plaintiff's tortious discharge claim.

### F. The Nevada Industrial Insurance Act (NIIA)

Defendants argue that Plaintiff's tort claims for tortious discharge and breach of the implied covenant of good faith and fair dealing are barred by the Nevada Industrial Insurance Act (NIIA). The Court disagrees and finds that the NIIA does not preclude these claims.

The NIIA provides the exclusive remedies for employees "on account of an injury by accident sustained arising out of and in the course of the employment." N.R.S. 616A.020(1); Wood v. Safeway, Inc., 121 P.3d 1026, 1031 (Nev. 2005). Under the NIIA, "accident" is defined as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." N.R.S. 616A.030. "Injury" or "personal injury" is defined as "a sudden and tangible happening of a traumatic nature,

1  producing an immediate or prompt result which is established by medical evidence[.]" N.R.S.
2  616A.265.

3  Plaintiff's claims for tortious discharge and breach of the implied covenant of good faith
4  and fair dealing relate to Eldorado's alleged reversal of commission fees earned by Plaintiff,
5  failure to pay overtime wages and wages for each hour worked, failure to provide breaks for
6  meals or rest, and termination of Plaintiff. These allegations clearly do not constitute "injuries"
7  or "accidents" within the meaning of the NIIA, as they are not violent or traumatic events
8  producing objective symptoms of injuries. Therefore, the NIIA does not bar these claims.

### G.  FLSA Overtime Claim (Count 6)

Next, Defendants argue that Plaintiff's allegations relating to his claim for unpaid overtime are not sufficient to state a claim.

"[I]n order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments [under the FLSA] must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." Landers v. Quality Comm'ns, Inc., 771 F.3d 638, 644-45 (9th Cir. 2014). "A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." Id. at 645. While a plaintiff need not allege the amount of overtime compensation he is owed "with mathematical precision," he must nonetheless allege sufficient facts to allow the court to infer that "there was at least one workweek in which [he] worked in excess of forty hours and [was] not paid overtime wages." Id. at 646.

The Court finds that Plaintiff's FLSA overtime claim fails to meet the pleading standard set forth in Landers. The only allegations in the Amended Complaint relating to Plaintiff's overtime wages claim are that "Eldorado failed to pay Plaintiff overtime due to him despite the fact that he consistently worked over 40 hours per week," that "Plaintiff believes that Eldorado infrequently paid his overtime based upon hours worked in weekly periods which is not

consistent with the law," and that Eldorado "failed and refused to pay overtime" and "fail[ed] to compensate Plaintiff at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek." Am. Compl. This is precisely the type of pleading foreclosed by Landers. In that case, the Ninth Circuit dismissed an allegation that a plaintiff "worked more than 40 hours per week for the defendants, and the defendants willfully failed to make said overtime and/or minimum wage payments." 771 F.3d at 646. Plaintiff's allegations do not meet the pleading standard for FLSA overtime claims set out in Landers. Therefore, this claim is dismissed with leave to amend.

### H.  Private Right of Action to Enforce Nevada Labor Statutes (Counts 6-11)

First, Defendants argue that Counts 6 through 11 must be dismissed because there is no private right of action to enforce the labor statutes raised in those counts: N.R.S. 608.018 (overtime), N.R.S. 608.016 (failure to pay each hour worked), N.R.S. 608.019 (meal and rest periods), N.R.S. 608.100 (unlawful taking of wages), N.R.S. 608.190 (willful failure to pay wages), or N.R.S. 608.040 (waiting time penalties). Defendants rely on the decision of the Supreme Court of Nevada in Baldonado v. Wynn Las Vegas, LLC, 194 P.3d 96 (Nev. 2008),[2] as well as several decisions from courts in this district, to support their argument. In response, Plaintiff states that he does not oppose the dismissal of their claims under these statutes, but reserves the right to file a motion to amend his complaint if proof comes to light that a private right of action may be available under these statutes.

For the purposes of considering possible amendment, this Court notes that it *does* find that there is a basis under Nevada law for an employee to bring a private right of action under

---

[2] In Baldonado, the Nevada Supreme Court found there is no private right of action to enforce N.R.S. 608.160, N.R.S. 608.100, or N.R.S. 613.120. 194 P.3d at 958-64. However, in a footnote, the Court acknowledged that N.R.S. 608.140 "expressly recognize[s] a civil enforcement action" by employees to recover unpaid wages. Id. at 964 n.33.  Subsequent to Baldonado, the Nevada Supreme Court again referenced a privae right of action in an unpublished opinion in Csomos v. Venetian Casino Resort, LLC, in which the court reasoned that the legislature likely intended a private right of action under NRS 608.140 because the statute references attorney fees. No. 55203, 2011 WL 4378744, at *2, 2011 Nev. Unpub. LEXIS 1629 at *6 (Nev. Sept. 19, 2011) ("It is doubtful that the Legislature intended a private cause of action to obtain attorney fees for an unpaid wages suit but no private cause of action to bring the suit itself.")

- 13 -

N.R.S. 608.140 to recover "wages earned and due according to the terms of his or her employment." N.R.S. 608.140; see Baldonado v. Wynn Las Vegas, LLC, 194 P.3d 96, 104 n.33 (Nev. 2008) (describing N.R.S. 608.140 as providing for "civil actions *by employees* to recoup unpaid wages," and stating that "the existence of express civil remedies within the statutory framework of a given set of laws indicates that the Legislature will expressly provide for private civil remedies when it intends that such remedies exist") (emphasis added).[3] The Court also finds that the statutes invoked in Counts 6 through 11 may provide a basis for recovery of unpaid wages in an action brought under N.R.S. 608.140. Therefore, because amendment would not be futile, Plaintiff shall be permitted to amend his complaint as to these causes of action.

### I. Claims against Individual Defendants

Defendants also argue that the Individual Defendants (Michael Marrs, Bruce Polansky, Kristen Beck, Dominic Taleghani, and James Grimes) should be dismissed from these cases, both because they cannot be held liable for violations of Title VII and because Plaintiff has failed to allege sufficient facts against them. Azizi does not name any of the Individual Defendants in any of his causes of action. Therefore, the Individual Defendants are dismissed without prejudice from his case.

### V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (ECF No. 18) is granted in part and denied in part, as follows:

- Count 4 (Breach of the Implied Covenant of Good Faith and Fair Dealing) is dismissed only with respect to the potential for tort liability.
- Count 6 (FLSA Overtime) is dismissed with leave to amend.

---

[3] Supra, n.2 The Court also notes that the plain language of the statute supports the existence of a private right of action. The statute identifies categories of individuals—not officials—as those who may "have cause to bring suit for wages earned." N.R.S. 608.140 (identifying mechanics, artisans, miners, laborers, servants, and employees as "hav[ing] cause to bring suit for wages earned and due"). Moreover, the provision within the statute for the payment of "attorney fee[s]" further supports an implied private right of action. There would be no need for such allowance within the language of the statute if a private right of action were not implied.

- Counts 6 through 11 (Violations of the Nevada Labor Statutes) are dismissed with leave to amend.
- All the Individual Defendants are dismissed from the case without prejudice.
- All other claims may proceed.

DATED October 5, 2016:

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**

- 15 -